IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH JOHNSON,

    Plaintiff

v.

UNITED STATES OF AMERICA, et. al.,

    Defendants

**CIVIL ACTION NO. 3:03-0756**

(JUDGE NEALON)

FILED
SCRANTON
OCT 2 4 2005
PER _____
DEPUTY CLERK

**MEMORANDUM AND ORDER**

Background

On May 6, 2003, Plaintiff, Joseph Johnson ("Johnson"), filed this combined Bivens[1] and Federal Tort Claims Act complaint against the United States of America, Defendant Rod Kerstetter, Assistant Inmate Systems Manager, and Garth Bingaman, Inmate Systems Officer. (Doc. 1). The Plaintiff is proceeding via an amended complaint. (Doc. 31). Johnson alleges that on Friday, July 26, 2002, he placed an envelope containing certain documents to be mailed to the Supreme Court of Virginia into the legal mailbox at the Federal Prison Camp at Lewisburg. The documents

---

[1] See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

contained in the envelope were to be filed in Plaintiff's ongoing litigation in that court. Johnson claims that he attached an "Inmate Request to Staff" form to the envelope indicating that the envelope had to be postmarked by Monday, July 29, 2002, to meet a court deadline. He states, however, that his legal mail was not postmarked until July 30, 2002, and was rejected by the Supreme Court of Virginia as untimely, which resulted in Johnson losing his opportunity to appeal his criminal conviction in that court. (Doc. 31).

Thus, Plaintiff filed the instant action in which he claims that Defendant Bingaman, who was responsible for emptying the legal mailbox during the month of July 2002, failed to pick up the mail between the dates of July 26, 2002 and July 29, 2002, which resulted in Plaintiff's petition for appeal being post-marked July 30, 2002.

By Order dated September 24, 2004, Defendants' motion to dismiss Johnson's Federal Tort Claim Act was granted and Plaintiff's motion for summary judgment was denied. (Doc. 103). The motion to dismiss Johnson's Bivens claim with respect to Defendant Kerstetter was granted, and Kerstetter was dismissed from the action. Id. Defendant Bingaman sought to be shielded from liability on the basis of qualified immunity. Id. However, the facts alleged in Plaintiff's complaint were found sufficient to set forth a constitutional violation of Plaintiff's access to the courts and

2

that the right was clearly established at the time the alleged incident occurred, thereby negating any entitlement to qualified immunity. Id. Thus, the motion to dismiss Defendant Bingaman was denied. Id.

On October 14, 2004, Bingaman filed an answer to the complaint. (Doc. 105). He subsequently filed a Motion for Summary Judgment rasing the same qualified immunity defense which he had previously raised in his Motion to Dismiss. (Doc. 122). The Summary Judgment Motion was denied by Order dated September 28, 2005 for the same reasons that the Motion to Dismiss was originally denied. (Doc. 145).

A pretrial conference was held on September 20, 2005 at which time the parties were directed to submit briefs on the issue of whether interference with access to the courts required a showing of intentional interference or deliberate indifference, or whether negligence, oversight, or dereliction would be sufficient. (Doc. 145, n.2). Both parties have now filed briefs setting forth their views of the standard applicable to interference with access to the courts under the First Amendment. For the reasons set forth below, it is concluded that plaintiff must allege intentional conduct on the part of Bingaman in order to state a constitutional claim of denial of access to the courts.

Discussion

Interference with legal mail implicates a prison inmate's right to access to the courts. Under Bounds v. Smith, 430 U.S. 817, 97 S.ct. 1491, 52 L.Ed.2d 72 (1977), prison inmates have a constitutional right to access the courts under the First Amendment. Id. at 824-25, 97 S.Ct. at 1491. However, a plaintiff must allege intentional conduct on the defendant's part in order to state a claim that his right of access to the courts has been denied. Simkins v. Bruce, 406 F.3d 1239, 1242 (10th Cir. 2005). "Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation." Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir. 1992); Jackson v. Procunier, 789 F.2d 307, 311 (5th Cir. 1986). If "access to the courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs." Simkins at 1242 *citing* Pink v. Lester, 52 F.3d 73, 77 (4th Cir. 1995). "It is well-settled that the protections afforded prisoners by the Due Process Clause are not triggered by the simple negligence of prison officials." Burnside v. Moser, 138 Fed. Appx. 414, 416 (3d Cir. 2005). This reasoning is equally applicable to a first amendment analysis.

In the instant case, Johnson alleges that he placed his mail in the legal mailbox on Friday, July, 26, 2002. Johnson attached an "Inmate Request to Staff" form to the mail and on that form he wrote that the attached legal mail "had a court deadline of July 29, 2002, and must be postmarked on that date." (Doc. 31, ¶ 25). Bingaman was

4

the prison employee who was in charge of emptying the legal mailbox for the week of July 26, 2002. Plaintiff alleges that Bingaman failed to pick up the mail in the legal mailbox on July 29, 2002 resulting in the untimely posting of Johnson's letter and the ultimate dismissal of his appeal to the Virginia Courts for failure to timely file an appeal.

Johnson's amended complaint does not allege that Bingaman acted intentionally when he failed to empty the legal mailbox and postmark Johnson's legal mail. Further, Johnson's deposition testimony provides no indication or allegation that Bingaman's actions was intentional. Specifically, Johnson states that he believed that Bingaman just got busy on Monday, July 29, 2002, and forgot to empty the legal mailbox that day. (Doc. 124, Ex. 1, p.38). He further explained that he never had a conflict with Bingaman and that he never spoke to Bingaman "about anything relating to" the petition for appeal which he placed in the legal mail. (Doc. 124, Ex. 1, p.23). These facts make it clear that Johnson has failed to sufficiently allege the intentional conduct necessary to state a claim for denial of access to the courts.

Additionally, an act only becomes intentional "when the actor intends not only the act, but the harmful consequences of the act" as well. Stevenson v. Koskey, 877 F.2d 1435, 1439 (9th Cir. 1989). Therefore, even if Johnson's allegations were sufficient to show that Bingaman intentionally failed to empty the legal mailbox, his claim still fails because he has made no allegation that Bingaman intended, or even

5

knew of, the negative consequence of this failure.

In his briefs, Johnson focuses the court's attention on the actual injury requirement of a claim for denial of access to the courts. Johnson reasons that the dismissal of his appeal establishes the requisite actual injury. While Johnson's argument is well articulated, it fails to recognize that a claim for denial of access to the courts requires not solely an actual injury but also intentional conduct in bringing about that injury. The majority of the cases upon which Johnson relies involve factual scenarios where the intentional conduct requirement was clearly satisfied. This preliminary requirement being met, the court was then free to move on to a determination of whether an actual injury occurred. *See* Ex parte Hull, 312 U.S. 546 (1941) (prison official refused to notarize habeas corpus petition and confiscated letter to clerk of court regarding case); Monsky v. Moraghan, 127 F.3d 243 (2d Cir. 1997) (judge allowed his dog to harass plaintiff who was attempting to file documents in the clerk of courts office); McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (no evidence at trial that prisoner was denied law library access based on improper motives and so no claim for denial of access to courts). In the instant case the first hurdle to stating a denial of access to the courts claim is not crossed and, consequently, there is no need to further the analysis.

Assuming arguendo that Johnson could establish an actual injury which resulted from Bingaman's delay in emptying the legal mailbox, his claim must still

6

fail since he cannot show that Bingaman acted intentionally.

Date: October 24, 2005                    _____
                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH JOHNSON, :
:
Plaintiff :
:
: **CIVIL ACTION NO. 3:03-756**
v. :
: (JUDGE NEALON)
UNITED STATES, et. al., :
:

ORDER

**AND NOW**, this 24th day of October, 2005, upon the court's *sua sponte* consideration of the legal standard for a First Amendment claim of interference with access to the courts and in accordance with the accompanying Memorandum of this date, **IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's Amended Complaint (Doc. 31) is **DISMISSED** with respect to Defendant Bingaman for failure to state a claim;

(2) The Clerk of Court shall **CLOSE** this case.

United States District Judge